UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

EVELYN BRISBOIS,

                               **Plaintiff,**

-against-                                              1:03-CV-1214

UNITED STATES OF AMERICA,

                               **Defendant.**

────────────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**

### DECISION & ORDER

## I. INTRODUCTION

      On October 3, 2003, Plaintiff commenced this negligence action against the United States under the Federal Tort Claims Act seeking to recover for personal injuries that Plaintiff purportedly sustained while on the steps of a United States Post Office in Rifton, New York. See Comp. [dkt. 1]. Presently before the Court is the Defendant's motion for summary judgment. For the reasons that follow, that motion is granted and the action is dismissed.

## II. PROCEDURAL BACKGROUND

      On March 4, 2005, Defendant filed a motion for summary judgment seeking to dismiss this action. The motion was noticed for this Court's April 11, 2005 motion calendar. On April 11, 2005, Plaintiff's counsel electronically filed a letter requesting a three (3) week adjournment of the motion. See dkt. # 17. After the Court issued an Order to Show Cause seeking an explanation from

Counsel of why he waited until the return date of the motion to request the adjournment, see April 12, 2005 Order to Show Cause [dkt. # 18], Counsel responded to the Order to Show Cause, see dkt. 19, and filed opposition to the pending motion. See dkt. # 20 - # 24.  The Court then issued a Decision and Order that, *inter alia,* denied Plaintiff's request to conventionally file exhibits to Plaintiff's motion. See April 21, 2005 Decision and Order, dkt. # 25.  Despite advising Counsel of the location of scanning equipment that he could use to electronically file these exhibits, see id. p. 3, no further attempt was made to file the exhibits to Plaintiff's opposition papers.[1]  Defendant timely filed a reply to the Plaintiff's papers.  The parties were advised that the Court would decide the motion upon the submissions on record before the Court.

## III. STANDARD FOR SUMMARY JUDGMENT

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002); Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999).  The Court may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes

---

[1] Plaintiff's opposition papers were due to be filed by May 10, 2005.  Thus, at the time the Court issued its Decision and Order on April 21, 2005, Plaintiff still had eighteen (18) days to scan and electronically file the documents that counsel attempted to file conventionally.

2

demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

On a motion for summary judgment, it is the duty of the attorneys, not the Court, to sift through the record and bring to the Court's attention the pertinent information that may create a triable issue of fact. See Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree with those circuits that have held that FED. R. CIV. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")(citations omitted). In this regard, the Court's Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court is not required to consider what the parties fail to point out." Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000)(internal quotation marks and citations omitted). Specifically, the Local Rules require a party moving for summary judgment to submit a "Statement of Material Facts" which

> shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the

>Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits.

N.D.N.Y.L.R. 7.1(a)(3).

>Once such a statement is submitted, the party opposing summary judgment
>
>shall file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.

Id. (emphasis in original).

Plaintiff's submissions in opposition to the pending motions evince either a misunderstanding of, or a disregard for, the above-referenced requirements. Plaintiff's Statement of Material Facts ("PSOMF") [dkt. # 22] neither mirrors Defendant's Statement of Material Facts ("DSOMF"), nor admits or denies the allegations contained in DSOMF. Further, because Plaintiff's counsel chose not to scan and electronically file the exhibits that are referenced in the PSOMF, virtually none of the allegations in that document have any evidentiary support.

Plaintiff does provide an affidavit [dkt. # 21]. To the extent the assertions in Plaintiff's affidavit are based upon personal knowledge and do not amount to surmise, speculation or unsupported conclusory allegations, it is considered in opposition to Defendant's Statement of Material Facts. In all other regards, the properly supported allegations in Defendant's Statement of Material Facts are deemed admitted for purposes of this motion. N.D.N.Y.L.R. 7.1(a)(3); Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(*per curiam*)(accepting as true material facts contained

in unopposed local rule statement of material facts). With these parameters in mind, the Court turns to the facts, viewed in the light most favorable to the Plaintiff, that are supported by the record.

**IV. FACTUAL BACKGROUND**

Plaintiff maintains one of 400 post office boxes at the Rifton, New York Post Office ("Post Office"), and has been a daily patron of that Post Office for the past 40 years. DSOMF ¶ 1; Def. Appendix ("App.") p. 22 . The Post Office is located in a building leased by the United States Postal Service ("USPS") from David and Josephine Besares pursuant to a Lease Agreement ("lease"). DSOF ¶ 2. The terms of the lease require that the landlords, or their agents, maintain the exterior physical portions of the leased premises, including the roof. See Def. App. pp 10-12. Defendant contracted for snow plowing and sanding of the parking area in front of the building, and its employees assumed responsibility for removing snow from the steps and putting sand or salt around the walkways. Id. at pp. 64-66, 82 (Burke Dep.); id. at pp. 31-34, 40-41 (Tedesco Dep.).

On March 18, 2003, the weather outside was clear, sunny and warm. DSOMF ¶ 3. It had snowed the previous day, but on March 18th there was no snow on the steps in front of the Post Office. Def. App. p. 41. No one placed sand on the steps on March 18, 2003. Def. App. pp 31-33. Snow from the previous day's snowfall that had accumulated on the roof was melting and, because there was no gutter above the entrance to the Post Office, water was dripping onto the steps. DSOMF ¶ 5. At approximately 10:00 a.m. on March 18th, Plaintiff came to the Post Office to pick up her mail and observed the water running off of the roof onto the steps. Def. App. at p. 119 (Brisbois Dep.). She rushed up the stairs to avoid being hit by the water runoff and fell, sustaining injury. Id. ¶ 4, ¶ 6. Plaintiff contends that she "slipped and fell on an accumulation of sand and

5

water that had built up on the steps of the ... Post Office." Brisbois Aff. ¶ 2.[2] April Tedesco, the Officer in Charge at the Post Office and the person who was responsible for spreading sand or salt on the walkway, theorized that the sand on the steps at the time of Plaintiff's fall had accumulated there by being tracked up from the parking lot on patron's shoes. Def. App. p. 33.

The condition of the roof over the entryway door - i.e. the lack of a proper gutter to stop water running off onto the steps - had been a constant condition for at least five months prior to Plaintiff's accident. Id. p. 104. However, no patron had ever complained about the condition of the entryway, id. pp. 29, 104, and there is no evidence of any prior accidents on the steps.

## V. DISCUSSION

Under the Federal Tort Claims Act, tort liability for an accident based on the alleged negligence of the government is governed by the laws of the state where the accident occurred--in this case, New York. Scoma v. United States, 2004 WL 40511, at *2, n.2 (E.D.N.Y. Jan. 7, 2004)(citing Richards v. United States, 369 U.S. 1, 11 (1962); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). In order to establish negligence under New York law, Plaintiff must prove: (1) the existence of a duty on Defendant's part as to Plaintiff; (2) a breach of this duty; and (3) injury to the Plaintiff as a result thereof. Scoma, 2004 WL 40511, at *2.

In support of its motion, Defendant argues that it breached no duty to Plaintiff. In

---

[2] Plaintiff's affidavit is self-contradictory as to what she believes caused her to slip and fall. At paragraph 7 of her affidavit, she asserts:

> [There was] an excessive amount of sand on the steps, but water continually ran off of the roof and mixed with the sand, causing the stairs to become very slippery. I did not see any salt, calcium chloride or other abrasive substances on the stairs. I slipped because of the excessive sand and salt on the Defendant's steps, and there was no way for me to get traction once I began to slip.

Brisbois Aff. ¶ 7 (emphasis added).

opposition, Plaintiff first argues that a question of fact exists as to Defendant's liability because the steps in front of the Post Office were constructed in violation of New York's Building Code. See Plf.'s Mem. L. ¶ 9.  However, Plaintiff has proffered no admissible evidence of the particulars of the steps' construction and, therefore, this argument is insufficient to withstand summary judgment. Accordingly, Defendant is granted summary judgment dismissing that much of the action premised upon a theory of improper construction of the steps.

 Next, Plaintiff contends that summary judgment should be denied because "Defendant failed to show that it maintained its premises in a reasonably safe condition because it permitted water to drip from its roof onto the steps to the only public entrance to its Post Office." Pltf. Mem. L. ¶ 9.  In this regard, Plaintiff focuses her argument almost entirely on the fact that the building did not have gutters above the entryway thus allowing water to drip from the roof on to the steps. See id. ¶ 10 ("Defendant cannot claim that it did not have notice of the dangerous recurrent condition because its employees were aware of water dripping from the roof onto the front steps."); ¶ 11 ("Additionally, notice is not required because the Defendant created the condition by permitting water from its roof to be discharged onto the public entranceway to its Post Office."); ¶ 16 (discussing whether Defendant's employees were aware "that water dripped from the roof on to the steps."); ¶ 19 - ¶ 21 (discussing landowner's obligation to control water running off of a roof onto a walkway); ¶ 22-23 (discussing cases where plaintiffs fell on steps and sidewalks that became wet because water ran off of an adjacent roof); ¶ 24 ("Defendant failed to have a gutter to divert water from falling onto and near the stairway to its only public entrance. As such, there are questions of fact regarding whether the Defendant created the dangerous condition by failing to divert or otherwise control water falling from its roof.").  However, the uncontradicted facts reveal that the landlords, not Defendant, were

contractually obligated to maintain the exterior portions of the building including the roof above the entryway. Accordingly, any hazzard caused *solely* by the failure to have gutters in this location does not create a basis to impose liability upon Defendant. See Morrison v. Gerlitzky, 724 N.Y.S.2d 73, 74 (2nd Dept. 2001)(holding that tenant who used exterior steps, but did not create their alleged dangerous condition, and had no contractual responsibility for their maintenance, could not be held liable for failing to correct their condition). Thus, to the extent Plaintiff's case rests on the assertion that the dangerous condition that caused her fall was solely the water dripping from the roof, Defendant is entitled to summary judgment. See Welwood v. Assoc. for Children with Down Syndrome, Inc., 670 N.Y.S.2d 556, 557 (2nd Dept. 1998)("Here, the evidentiary submissions by the defendant [] demonstrated that it did not have an exclusive right to possession of the parking lot, and that it had no right or obligation to maintain this area. Moreover, there is no evidence that the defendant [] created the condition which caused the injured plaintiff's accident. Since the defendant [] owed the injured plaintiff no duty of care to maintain the parking lot, it cannot be held liable for permitting the existence of a dangerous condition."); Millman v. Citibank N.A., 627 N.Y.S.2d 451, 452 (2nd Dept. 1995)(holding that tenant was not liable to victim who tripped in pothole in parking lot as tenant did not have exclusive use of parking lot and landlord had contractual obligation to keep it in good repair, and there was no evidence that tenant created the dangerous condition).

Third, Plaintiff asserts that Defendant is liable to her because the *combination* of water and sand on the steps created a dangerous condition that caused her fall. See Pltf. Mem. L. ¶ 2.[3] "To

---

[3] As indicated above, Plaintiff's legal arguments as to the dangerous condition purportedly causing her fall are addressed almost exclusively to the situation caused by the lack of gutters above the entryway. However, she does assert in her Memorandum of Law that "Defendant's steps had an accumulation of water *and sand* on them at the time of Ms. Brisbois' fall. Water dripped and splashed onto the steps because the roof above the steps had no gutter to divert water." Mem. L. ¶ 2 (emphasis added). As also indicated above, she also asserts in her affidavit that she "slipped and fell on an accumulation of sand and water that had built up on the steps of the ... Post Office." Brisbois Aff. ¶ 2. While

8

establish a *prima facie* case of negligence, the plaintiff in a slip and fall case must demonstrate that the defendant created the condition which caused the accident, or that the defendant had actual or constructive notice of the condition." Sanchez-Acevedo v. Mariott Health Care Serv., 707 N.Y.S.2d 118, 119 (2nd Dept. 2000)(citation omitted).  As to whether Defendant created the condition that caused the accident, the evidence is uncontradicted that Defendant had no contractual obligation to maintain or repair the roof and, therefore, it cannot be said that Defendant created the condition caused by the dripping water. Further, the undisputed facts reveal that Defendant's employees and/or agents did not place sand or salt on the steps on April 18, 2003.  Plaintiff's conclusory allegation to the contrary is unsupported by the instant record, and therefore there is no basis to hold Defendant liable for creating the purportedly dangerous condition that existed on March 18, 2003. See Goldman v. Waldbaum, Inc.,  746 N.Y.S.2d 44, 44 (2nd Dept. 2002)("In this case, the defendants satisfied their burden on the motion for summary judgment by submitting evidence which demonstrated that they neither created the allegedly dangerous condition, a wet slippery film on the floor of a checkout lane of the defendant supermarket, nor had actual or constructive notice of it. In opposition, the plaintiff submitted an affidavit containing unsubstantiated and speculative assertions that merely theorized that the dangerous condition was created when the supermarket's employee mopped the floor."); Sanchez-Acevedo, 707 N.Y.S.2d at 119 ("In this case, the defendant satisfied its burden on the motion for summary judgment by submitting evidence which demonstrated that it did not create the alleged defective condition, a puddle of unidentified liquid in proximity to some potted plants, and that it did not have actual or constructive notice of the

---

Plaintiff does not provide any legal argument addressed to conditions caused by circumstances that are only partially in the control of a defendant, the Court will presume that she proceeds on this alternative theory.

existence of the condition. In opposition, the plaintiff merely theorized that the puddle was created when the defendant's employees watered the plants. Since the plaintiff's submissions were unsubstantiated and speculative, they were insufficient to raise a triable issue of fact as to the defendant's responsibility in creating the alleged condition, and the defendant's motion for summary judgment was properly granted.")(citations omitted); Gonzalez v. Pathmark Stores, Inc., 676 N.Y.S.2d 488, 488 (2nd Dept. 1998)("The plaintiff's contention that the appellant's employees created the dangerous condition by wheeling in wet shopping carts from the outside, where it had been raining, is pure speculation.")(citations omitted).

The question then is whether Defendant had actual or constructive notice of the slippery condition caused by the mixing of water and sand such to impose liability upon it. Taylor v. United States, 121 F.3d 86, 89-90 (2d Cir. 1997)("Under New York law, a landowner, who did not create the dangerous condition, is liable for negligence when a condition on his land causes injury only when the landowner had actual or constructive notice of the condition.")(citation omitted). Since there is nothing in the record demonstrating that Defendant had actual notice of a slippery condition on the steps on March 18, 2003 caused by the combination of water and sand, Plaintiff must proceed upon the theory of constructive notice.

Constructive notice typically requires a showing that the condition was visible and apparent and existed for a sufficient period of time prior to the accident to permit Defendants to discover it and take corrective action. Boyko v. Limowski, 636 N.Y.S.2d 901, 901 (3rd Dept. 1996). Here, there was no evidence that the defendant knew about any alleged dangerous condition caused by the mixture of water and sand on March 18, 2003, or how long it existed. The uncontradicted evidence indicates that no patron had complained of the condition of the entryway. Of course, the lack of a

complaint does not rule out that Defendant's employees might have been aware of a dangerous condition. Certainly, the facts reveal that for months before Plaintiff's accident, Defendant's employees had actual knowledge that water ran off of the roof onto the steps when snow melted. Further, a reasonable inference could be drawn that Defendant's employees had actual knowledge that patrons tracked sand up onto the steps in the days following a snowstorm. Thus, it could fairly be said that Defendant had actual knowledge that water and sand mixed on the steps on warm days following snowfalls.

However, even accepting these facts on this motion, Plaintiff has failed to proffer evidence that an apparently *dangerous* condition existed on the steps on April 18th, 2003 from the mixture of sand and water. It is difficult to perceive how the mixture of sand and water could cause a dangerous condition inasmuch as sand is generally used as an abrasive material to prevent slipping on water and ice. See Brisbois Aff. ¶ 7 (claiming she did not see "any salt, calcium chloride or other abrasive substances on the stairs."). Assuming *arguendo* that the mixture could create a slippery condition,[4] it is even more difficult to perceive how the accumulation of sand from patrons' feet could reach the threshold level of dangerousness. See fn. 4, supra.

Nonetheless, even crediting Plaintiff with every reasonable favorable inference available on this record, she has still failed to proffer any evidence to establish that the mixture of sand and water on the steps reached the threshold level of dangerousness, or, if it did, how long the condition existed before Plaintiff's fall. While the sand and water on the steps might have been visible on March 18, 2003, there is no evidence that the dangerousness of the condition was "apparent," or,

---

[4] Viewing the evidence in the light most favorable to Plaintiff and drawing every reasonable inference in her favor, it may be possible that an excessive amounts of sand, or a particular type of sand (perhaps with dirt in it such that it turns to mud when mixed with water) could cause a slippery condition when mixed with water.

11

even if it was, how long it existed prior to Plaintiff's fall.  Accordingly, Plaintiff has not establish that Defendant had constructive notice of a dangerous condition on March 18, 2003 under the traditional method of establishing such notice.  Goldman, 746 N.Y.S.2d at 44; see Dane v. Taco Bell, Corp., 746 N.Y.S.2d 45, 46 (2d Cir. 2002)("[P]laintiff failed to establish that the defective condition was visible and apparent, and existed for a sufficient period of time before the accident for the defendant to discover and correct it. The plaintiff presented no evidence concerning the length of time the water and ice had been on the floor before his fall or whether the defendant had received prior complaints concerning the condition.  Therefore, the Supreme Court properly granted the defendant's motion for summary judgment dismissing the complaint."); Fay v. Bass Hotels and Resorts, Inc., 2003 WL 21738967, at * 5 (S.D.N.Y. July 28, 2003)("Because plaintiffs have failed to set forth facts showing that the liquid on the floor was visible and have failed to provide evidence regarding how long the liquid had been there, a reasonable fact finder could not find that defendant had 'traditional' constructive notice.").

 Plaintiff's argument of notice through a recurring dangerous condition theory also fails on this record.  "Intermediate appellate court cases in New York have held that where a defendant has actual knowledge of a recurring dangerous condition, the defendant can be charged with constructive notice of each specific recurrence of that condition." Fay, 2003 WL 21738967, at * 6 (citations omitted). In this regard, a plaintiff can establish constructive notice "by evidence that an ongoing and recurring dangerous condition existed in the area of the accident which was routinely left unaddressed by the [defendant]." O'Connor-Miele v. Barhite & Holzinger, Inc., 650 N.Y.S.2d 717, 719 (1st Dept. 1996).  "To establish notice under the recurring dangerous condition theory, [P]laintiff[] must show that [her] fall was caused by a specific recurrence of a recurring dangerous

12

condition, about which defendant[] had actual notice." Fay, 2003 WL 21738967, at * 6

Unlike the cases that have found constructive knowledge through the recurrence of a dangerous condition, here there is no evidence that Defendant's employees ever had an awareness that the mixture of sand and water created a slippery condition on the steps. See, e.g., Lowe v. Sparda, 722 N.Y.S.2d 820, 821 (3d Dept. 2001)(finding question of fact on recurring dangerous condition theory where plaintiff slipped on bathroom floor after washing her hands and defendant's supervisor testified that the location of the paper towel dispenser across the room from the sink created a chronic and recurring puddling of water on the floor near the sinks that needed to be, but often was not, mopped regularly); McLaughlan v. Waldbaums, Inc., 654 N.Y.S.2d 406, 407 (2d Dept. 1997)(plaintiff was allegedly injured when numerous bottles of soda fell from a store display and struck her after she had taken a bottle from display, and store employee testified that "the subject display would become 'tipsy' and 'wobbly' when customers took bottles from the bottom of the display, occasionally causing other bottles higher up on the display to fall"). The simple fact that it snowed previously and, therefore, a fact finder could presume that (a) sand had been placed on or below the steps, (b) snow melted off the roof and dripped onto the steps, and (c) the water and sand mixed, does not establish the requisite knowledge of dangerousness such to allow a finding of constructive notice. Without an awareness that a dangerous condition repeatedly presented itself, the claim of negligence premised upon the recurring dangerous condition theory fails. See Fay, 2003 WL 21738967, at * 8 ("[I]n the present case, plaintiffs have presented no evidence that there ever existed a dangerous condition due to water puddles in the lobby of the Hotel, let alone a recurring problem.").

## VI. CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment is **GRANTED** and the action is **DISMISSED**.

**IT IS SO ORDERED**

DATED:  June 1, 2005

Thomas J. McAvoy
Senior, U.S. District Judge